UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

VALDEN DEVONE WHITE,

           Plaintiff,           Case No. 1:22-cv-890

v.                                    Honorable Sally J. Berens

UNKNOWN PALMER,

           Defendant.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues Corrections Officer Unknown Palmer. (Compl., ECF No. 1, PageID.2.)

Plaintiff's complaint concerns events of July 5, 2021. (*Id.*, Page ID.3.) Plaintiff claims that, while "responding to a fight in the unit," Officer Palmer deployed his Taser, striking Plaintiff in

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

the left eye and squeezing the trigger until Plaintiff was unconscious. (*Id.*) Officer Palmer then dragged Plaintiff out of the unit and refused to take Plaintiff to the hospital despite a comment from Registered Nurse Kim Silvernail (not a party) that "this is a poor shot and they should take me to the hospital!" (*Id.*)

As detailed in Exhibit 1 to Plaintiff's complaint, Plaintiff received medical care from Nurse Silvernail that same day. (ECF No. 1-1, PageID.10.) Nurse Silvernail reported that she removed a Taser probe from Plaintiff's left eyebrow area. (*Id.*) Plaintiff did not report any other injuries, and none were observed. (*Id.*)

As a result of the events of July 5, 2021, Plaintiff was charged with two counts of Class I Misconduct: Assault and Battery, in violation of MDOC Policy Directive 03.03.105A (ECF No. 1-1, PageID.12), and Disobeying a Direct Order, in violation of MDOC Policy Directive 03.03.105B (*id.*, PageID.13). Plaintiff was found guilty of both charges. (*Id.*, PageID.12–13.)

According to the Class I Misconduct Hearing Report attached as Exhibit 1 to Plaintiff's complaint, the July 12, 2021, hearing was held via videoconferencing technology. (*Id.*, PageID.12.) The report indicates that the hearing officer reviewed the misconduct report, hearing investigation report, video from the prison's surveillance system, misconduct sanction assessment, and offender restriction filter report. (*Id.*) Plaintiff was permitted to testify. (*Id.*, PageID.13.)

As to the charge of Assault and Battery, Plaintiff raised self-defense and pleaded not guilty. (*Id.*) Nonetheless, the hearing officer determined that Plaintiff was guilty for the following reasons: (1) Plaintiff punched Prisoner Addison in the face; (2) "[t]he contact was non-consensual because no person would agree to be hit in the face like that," consisting of Plaintiff repeatedly punching Prison Addison while Prison Addison put his hands in the air; and (3) the contact was intentional

4

"because punching someone in the face is a direct act." (*Id.*, PageID.12–13.) The hearing officer rejected Plaintiff's claim of self-defense on the basis that Plaintiff was the aggressor, finding that Plaintiff approached and struck Prisoner Addision, who had not used any force against Plaintiff. (*Id.*, PageID.13.)

Based upon the report, video and the prisoner's admission," the hearing officer also found Plaintiff guilty of Disobeying a Direct Order. (*Id.*) Disobeying a Direct Order requires the "[r]efusal or failure to follow a valid and reasonable order of an employee." (*Id.* (alteration in original).) "The hearing officer explained that Plaintiff was given an order to stop punching Prisoner Addison, heard the order, and refused to obey. (*Id.*) Given that Plaintiff had engaged in the misconduct of Assault and Battery, the hearing officer concluded that the order was valid and reasonable. (*Id.*)

Plaintiff brings claims against Officer Palmer for excessive force and deliberate indifference to Plaintiff's need for medical care, in violation of Plaintiff's Eighth Amendment rights. (*Id.*) Plaintiff seeks injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.4.)

## II.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Excessive Force

Plaintiff alleges that Officer Palmer used excessive force in violation of Plaintiff's Eighth Amendment rights when Officer Palmer deployed his Taser, striking Plaintiff above the left eye with one prong, and causing Plaintiff to lose consciousness.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of

confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d 380, 383 (6th Cir. 2011). We ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. In *Hudson v. McMillian*, the Supreme Court held that this analysis is guided by a number of factors, including: (1) the extent of the inmate's injury; (2) the need for the application of force; (3) the relationship between that need and the amount of force used; (4) the threat that the officials reasonably perceived; and (5) any efforts to temper the severity of a forceful response. 503 U.S. at 7.

Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The degree of harm necessary to satisfy the objective component depends on "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Like the subjective prong, the objective prong is contextual and therefore varies depending on the claim asserted. *Hudson*, 503 U.S. at 8-9.

### 1. Preclusive effect of the factual findings detailed in the hearing officer's misconduct report.

Though the Court is generally required to accept the facts as alleged by Plaintiff, the factual findings of the misconduct hearing officer have preclusive effect in this litigation. (ECF No. 1-1, PageID.12–13.)

The Sixth Circuit test for determining whether factual findings made within a Class I Misconduct hearing are entitled to preclusive effect was established in *Peterson v. Johnson*, 714 F.3d 905, 912 (6th Cir. 2013) (citing *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986)). Pursuant to *Peterson*, facts found during a Michigan prison hearing are given preclusive effect when (1) the state agency, in this case the Hearing Officer on behalf of the agency, was acting in a "judicial capacity," (2) the hearing officer resolved a disputed issue of fact properly before the officer, (3) the prisoner had a sufficient opportunity to litigate the issue, and (4) the findings of fact would be given preclusive effect by the Michigan courts. *Id.* at 912-14. The Sixth Circuit in *Peterson* determined that a major misconduct hearing (*i.e.*, a Class I Misconduct Hearing) satisfies the first and last criteria so long as the other two criteria are satisfied. *Id.* Given the facts as appended to Plaintiff's complaint, the Court finds the remaining two criteria satisfied.

As to the second criterion, the disputed issue of fact—whether Plaintiff was given a valid and reasonable direct order to stop punching Prisoner Addison, heard the order, and refused to follow it—was a core inquiry of the misconduct hearing. *Id*. at 913. Logically, the hearing officer could not have found Plaintiff guilty of Disobeying a Direct Order while still leaving open the possibility that Plaintiff had not attacked Prisoner Addison (thereby requiring a "valid and reasonable" order) or that Plaintiff had been compliant with Officer Palmer's demands. The hearing officer concluded that Officer Palmer's order was reasonable and valid, that Plaintiff heard and understood the order, and that Plaintiff nonetheless refused to comply, noting that "White kept

8

hitting Addison until he was tazed." (*Id.*, PageID.13.) Therefore, the hearing officer's factual findings satisfy the second criterion.

Turning to the third criterion, Plaintiff had an adequate opportunity to litigate the factual issue during the misconduct hearing. Not only did Plaintiff have an incentive to contest the factual issue because the finding would result in a loss of privileges, but he was given the opportunity to do so through personal testimony as to the events shown on video and detailed within the misconduct report. (*Id.*) Based on the procedures provided to all prisoners charged with a Class I Misconduct and the notes of the hearing officer, the Court believes that Plaintiff had an adequate *opportunity* to litigate the factual issues, regardless of whether Plaintiff chose to litigate vigorously. *Id.* (finding the third criterion satisfied because major misconduct hearings offer a "plethora of statutory protections" and the opportunity to appeal within the department and to the state courts if necessary). Because the hearing officer's factual findings satisfy each of the *Peterson* criteria, they are given preclusive effect in this litigation.

### 2. Use of force

Plaintiff does not allege that Officer Palmer's use of his Taser was altogether unwarranted. Plaintiff instead contends that the manner in which Officer Palmer deployed his Taser was a per se violation of the Eighth Amendment because it struck Plaintiff in the left eyebrow area, in violation of Officer Palmer's expected training. However, an officer's failure to conform to training alone—while perhaps negligent—does not state an Eighth Amendment claim. *See Daniels v. Williams*, 474 U.S. 327, 333 (1986). Moreover, liability for failure to train, to the extent pled, "attaches to a municipality rather than to an individual defendant." *Caldwell v. Moore*, 968 F.2d 595, 599–601 (6th Cir. 1992) (citation omitted).

Ultimately, prisons have a legitimate interest in maintaining security, order, and in having prisoners obey orders. *Bell v. Wolfish*, 441 U.S. 520, 560 (1979); *Caldwell*, 968 F.2d at 599–601.

9

"Corrections officers do not violate a prisoner's Eighth Amendment rights when they apply force 'in a good-faith effort to maintain or restore discipline.'" *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004)). It is therefore well-established that the use of tasers on recalcitrant prisoners does not violate the Eighth Amendment. *Caldwell*, 968 F.2d at 600-602 (collecting cases) (holding that the use of a stun gun on a prisoner who was ordered to stop shouting and kicking but did not comply was not excessive force); *Michenfelder v. Sumner,* 860 F.2d 328, 336 (9th Cir. 1988) (upholding use of a taser on a prisoner for failure to comply with strip search); *Gresham v. Steward*, No. 13-10189, 2014 WL 4231295, at *9–10 (E.D. Mich. Aug. 27, 2014) (finding that the use of a taser on a prisoner who refused to stop punching another prisoner even after ordered to do so was not excessive given the defendant's "interest in the threat posed by the altercation to other inmates, prison workers, administrators, and visitors."). *See also Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126 (6th Cir. 2014) (holding that deputies did not use excessive force against a county jail detainee in violation of the Fourteenth Amendment where officers tased an inmate multiple times because he continued to "thrash about" and struggle against the deputies who were trying to handcuff him); *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 509–10 (6th Cir. 2012) ("If a suspect actively resists arrest and refuses to be handcuffed, officers do not violate the Fourth Amendment by using a taser to subdue him."); *Hunter v. Young*, 238 F. App'x 336, 339 (10th Cir. 2007) (use of taser "objectively reasonable" under the Fourteenth Amendment where the defendant officer was aware that a physical altercation had just taken place and that the plaintiff was in lockdown, and where the defendant ordered the plaintiff to go to his bunk but the plaintiff did not comply); *Davis v. Agosto*, 89 F. App'x 523, 526-27 (6th Cir. 2004) (finding that officers appropriately continued to use non-lethal force when, after being maced, inmate forced his way out of a cell and "rushed"

10

into a hallway); *Draper v. Reynolds,* 369 F.3d 1270, 1278 (11th Cir. 2004) (holding that a "single use of the taser gun causing a one-time shocking" against a "hostile, belligerent, and uncooperative" arrestee in order to effectuate the arrest was not excessive force in violation of Fourth Amendment).

Accepting the facts as found by the hearing officer, the Court is left with no option but to conclude that Officer Palmer's use of his taser was done in a good-faith effort to restore discipline, not to maliciously or sadistically cause harm. Keeping in mind the *Hudson* factors, the Court finds that some level of non-lethal force was necessary to restore order and to protect Prisoner Addison, other prisoners, and the prison staff from Plaintiff's active violence. As found by the misconduct hearing officer, Officer Palmer attempted to temper the severity of a forceful response by ordering that Plaintiff stop punching Prisoner Addison; however, this effort was unsuccessful; Plaintiff refused to stop his attack until the taser was deployed. As to the relationship between the need and the amount of force used, this Circuit recognizes that "tasers carry 'a significantly lower risk of injury than physical force'. . . [;] the vast majority of individuals subjected to a taser—99.7%—suffer no injury or only a mild injury." *Hagans*, 695 F.3d at 510 (citation omitted). The foregoing factors are underscored by the fact that Plaintiff alleges minimal injury. While Plaintiff claims that a taser prong struck his left eye area, he alleges only swelling around his eye (ECF No. 1, PageID.3); no other injuries are alleged.

Viewed in context, Plaintiff cannot plausibly suggest that Officer Palmer's use of his taser violated contemporary standards of decency. The Court will dismiss Plaintiff's Eighth Amendment claim of excessive force.

### B. Deliberate Indifference

In prohibiting the cruel and unusual punishment of those convicted of crimes, the Eighth Amendment further obligates prison authorities to provide medical care to incarcerated

11

individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. at 102-04. The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id*. at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. . . . In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014).

Plaintiff provides the Court with no facts that would plausibly suggest that Officer Palmer was deliberately indifferent to Plaintiff's medical needs. Though Officer Palmer did not transport Plaintiff to the hospital for removal of the taser prong (ECF No. 1, PageID.3), Exhibit 1 to Plaintiff's complaint demonstrates that Plaintiff was provided adequate medical care on July 5, 2021, the same day as the taser incident. (ECF No. 1-1, PageID.10.) Plaintiff does not allege that he suffered any harm as a result of Officer Palmer's judgment to allow Plaintiff to be treated by prison medical personnel rather than in a hospital setting. Therefore, the Court will similarly dismiss Plaintiff's claim for deliberate indifference.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to Section 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of Section 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   February 15, 2022                             /s/ Sally J. Berens
                                                       Sally J. Berens
                                                       United States Magistrate Judge